**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 25-1150**

─────────────

THOMAS NAVARRO; JAMES GIORGIO; NINA SHAFFER,

Plaintiffs - Appellants,

v.

UNITED STATES CENTER FOR SAFESPORT; UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE; UNITED STATES EQUESTRIAN FEDERATION, INC.,

Defendants - Appellees,

and

UNITED STATES OF AMERICA,

Intervenor.

─────────────

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville.  Jasmine Hyejung Yoon, District Judge.  (3:24-cv-00030-JHY-JCH)

─────────────

Argued:  December 10, 2025                          Decided:  April 24, 2026

─────────────

Before NIEMEYER, THACKER, and BERNER, Circuit Judges.

─────────────

Reversed in part and affirmed in part by published opinion.  Judge Thacker wrote the opinion, in which Judge Niemeyer and Judge Berner joined.

─────────────

**ARGUED:** Tamara Leigh Tucker, TUCKER LAW FIRM, PLC, Charlottesville, Virginia, for Appellants.   Joseph Jacob Zonies, ZONIES LAW LLC, Denver, Colorado, for Appellees. Joshua Michael Koppel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** William C. Tucker, TUCKER LAW FIRM, PLC, Charlottesville, Virginia, for Appellants.   Elizabeth S. Turner, O'HAGAN MEYER, Richmond, Virginia, for Appellee United States Center for SafeSport.   William R. Poynter, Brian A. Wainger, KALEO LEGAL, Virginia Beach, Virginia, for Appellee United States Equestrian Federation, Inc.   Robert L. Wise, Josh Myers, NELSON MULLINS RILEY & SCARBOROUGH LLP, Richmond, Virginia, for Appellee United States Olympic & Paralympic Committee.  Brett A. Shumate, Assistant Attorney General, Courtney L. Dixon, Jeffrey E. Sandberg, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.

———————————

2

THACKER, Circuit Judge

In this case, three equestrian trainers -- Thomas Navarro, James Giorgio, and Nina Shaffer (collectively, "Appellants") -- claim that the United States Center for Safe Sport ("SafeSport") violated their Fifth Amendment rights by barring them from involvement in United States Olympic sports without first holding hearings on their alleged misconduct. Appellants further contend that SafeSport, a private organization, unconstitutionally wields governmental power. Therefore, Appellants sued SafeSport, as well as the United States Olympic and Paralympic Committee (the "USOC") and the United States Equestrian Federation (the "USEF") (collectively, "Appellees"), which enforce SafeSport's sanctions.

The district court dismissed Appellants' claims. The court held that (1) Shaffer had failed to exhaust her administrative remedies; (2) Appellants lack standing to sue USOC; (3) Appellees are not state actors and thus are not subject to the Fifth Amendment; and (4) SafeSport's sanction powers do not violate the private non-delegation doctrine.

For the reasons detailed below, we reverse the district court's holding regarding administrative exhaustion. But we affirm the court's holdings that Appellants lack standing to sue the USOC and that Appellees are not state actors subject to the Due Process Clause. Finally, we hold that we lack jurisdiction to reach Appellees' private non-delegation claim.

I.

A.

Statutory Background

Olympic sports have historically been private affairs. When the first Olympic Games were held in 1896, the government had no part in organizing the United States

3

delegation.   Members of the Amateur Athletic Union, a private international sporting organization, played that role instead.  Those members later formed a new organization specifically dedicated to funding and organizing American representation in the Olympic Games.  This new organization would eventually be known as the USOC.  But Congress did not formally recognize the USOC until 1950 when it granted the USOC a congressional charter[1] and the exclusive right to organize United States delegations to the Olympic and Pan-American Games.  Ben Wilhelm, Cong. Rsch. Serv., R47850, The United States Olympic and Paralympic Committee: A Primer 1–3 (2023).

Then, in 1978, the Ted Stevens Olympic and Amateur Sports Act of 1978, Pub. L. No. 95-606, 92 Stat. 3045 ("ASA") put in place the structure of Olympic sports as we know it today.  The ASA granted the USOC the power to recognize one national governing body ("NGB") for each Olympic sport from which Olympic athletes would be selected.  It also guaranteed access to the games for members of each NGB.  But the law did not create any NGBs.  Instead, it permitted private organizations to apply to serve as NGBs, provided that they complied with certain statutory criteria.  Relevant to this appeal is the requirement that each NGB provide its members with "notice and opportunity for a hearing" before sanctioning them for violations of the NGB's rules.  36 U.S.C. § 220522(8).  In addition,

---

[1] A congressional charter is a "statute that establishes a new organization or gives legal recognition to an existing organization," generally of "private, nonprofit corporations that appear to be of a patriotic character or national in scope."  Henry B. Hogue, *Title 36 Congressional Charters*, Congress.gov (Nov. 15, 2021), [https://perma.cc/9R5H-NR3J].

the ASA requires the USOC, the NGBs, and their members to submit disputes within the scope of the ASA to binding arbitration. Pub. L. No. 95-606 §§ 201, 205(c).

For the next forty years, the NGBs mostly governed themselves. But a growing series of abuse scandals within Olympic sports made that arrangement unsustainable. As a result, the USOC developed a plan to centralize and standardize abuse investigations involving NGB members. In 2014, the USOC incorporated SafeSport with the intention that it would handle those claims. Around that time, the USOC also convened a working group of governing bodies to draft a code to govern all allegations of emotional, physical, and sexual abuse within Olympic sports. The working group issued the first draft, known as the SafeSport Code, on March 3, 2017, after which SafeSport officially began operation.

In 2018, Congress codified and expanded SafeSport's authority via the Protecting Victims from Sexual Abuse and Safe Sport Authorization Act of 2018, Pub. L. 115-126, 132 Stat. 318, (codified as amended at 36 U.S.C. §§ 220541–43) (the "SafeSport Authorization Act" or the "Act"). That law, as amended,[2] states that SafeSport "shall . . . exercise jurisdiction over the [USOC] and each [NGB] with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports." *Id.* § 220541(a)(1)(B). The Act also makes compliance with the SafeSport Code a condition of eligibility for any private organization to serve as an NGB. *Id.* § 220541(a). And, like the ASA, it requires SafeSport to provide accused NGB

---

[2] *See* Empowering Olympic, Paralympic, and Amateur Athletes Act of 2020, Pub. L. No. 116-189, 134 Stat. 943.

5

members "fair notice and an opportunity to be heard," but expressly states, "[n]othing in this subsection shall be construed . . . to preclude [SafeSport] from imposing interim measures or sanctions on an individual *before* an opportunity for a hearing or arbitration. *Id.* §§ 220541(a)(1)(E), (a)(2), (b) (emphasis supplied).

The Act also retains the ASA's stated preference for arbitration by according SafeSport "discretion [to] utilize a neutral arbitration body . . . to resolve allegations of sexual abuse within its jurisdiction." *Id.* § 220541(c)(1). And it clarifies, "[n]othing in this subsection shall be construed . . . to give rise to a claim under State law or to create a private right of action," or "to render [SafeSport] a state actor." *Id.* § 220541(a)(2). Finally, the Act requires SafeSport to "publish and maintain a publicly accessible internet website that contains a comprehensive list of adults who are barred by [SafeSport]" from participating in Olympic sports. *Id.* § 220541(a)(1)(G).

SafeSport says that it has received more than 32,000 reports of sexual, physical, and mental abuse since the first version of the SafeSport Code was promulgated in 2017. As a result of those allegations, SafeSport has named more than 2,200 individuals as ineligible to participate in amateur or Olympic competitions. U.S. Ctr. for SafeSport, 2024 Annual Report 20 (2025), uscenterforsafesport.org/wp-content/uploads/2025/08/2024-Annual-Report_072225_v4c-Web.pdf [https://perma.cc/Y3JN-P2KK]. And as required by the Act, the SafeSport website publicly lists all sanctioned individuals in a searchable table that includes their full name, city of residence, offense, and the resulting penalty. SafeSport adds new entries almost daily. *Centralized Disciplinary Database*, U.S. Ctr. for SafeSport,

6

https://uscenterforsafesport.org/response-and-resolution/centralized-disciplinary-database/ [https://perma.cc/LP7C-RGNS].

The USEF is the NGB for equestrian Olympic sports. Although it does not encompass all equestrian sports in the United States, its affiliation with the Olympics makes it the largest, most important, and most prestigious equestrian organization. The USEF counts 150,000 athletes, coaches, breeders, and trainers as members. To join the USEF -- and thus to be eligible to participate in USEF and Olympic events, or to work with USEF members -- a prospective member must agree to comply with the USEF bylaws. In turn, as required by the Act, the USEF bylaws require compliance with the SafeSport Code.

## B.

### Factual & Procedural History

#### 1.

Each of the Appellants in this case was or is a USEF member. Navarro and Shaffer train horses and riders. Giorgio breeds horses. SafeSport investigated and sanctioned each of them for separate and independent abuse allegations.

#### a.

##### Navarro

In December 2018, Navarro received a notice letter from SafeSport informing him that he had been deemed ineligible for membership in the USEF because in 1998 he pled guilty to child sexual abuse, an offense which violates the SafeSport Code. SafeSport explained that the nature of Navarro's offense justified a permanent ban from participation in any USEF or USOC event. SafeSport further explained that any USEF or USOC

7

member who associates with Navarro in the future may be subject to similar sanctions, thus functionally barring Navarro from working with any member of those organizations.

Pursuant to the SafeSport Code, Navarro requested arbitration. The arbitrators held two hearings in March 2019, wherein Navarro, who was represented by counsel, submitted testimony and evidence in his defense. Navarro raised two issues: (1) whether SafeSport had violated his due process rights; and (2) whether permanent ineligibility was an appropriate sanction.

The arbitrator declined to credit Navarro's due process argument after noting that the Supreme Court has consistently held that the USOC and its affiliates are not state actors and thus are not subject to the Due Process Clause of the Fifth Amendment. The arbitrator also found that a permanent ban was a reasonable sanction under the circumstances.

b.

Giorgio

SafeSport permanently banned Giorgio from USEF membership in 2018 after learning of his 2007 guilty plea to child sexual abuse. At Giorgio's request, SafeSport agreed to re-open its investigation and conduct a further review of the sanctions SafeSport had imposed. Giorgio submitted a psychological evaluation and character statements arguing that he showed little risk of re-offending. Nonetheless, SafeSport affirmed its earlier decision.

Giorgio then submitted the matter to arbitration as permitted by the SafeSport Code. The arbitrator was unconvinced by Giorgio's arguments and found SafeSport's sanction reasonable under the circumstances. Accordingly, the arbitrator affirmed SafeSport's

8

sanction.  Giorgio is thus functionally barred from professionally associating with any USEF or USOC member.

c.

Shaffer

Shaffer is the only Appellant who is still a USEF member.  In August 2021, SafeSport received a complaint alleging that Shaffer had violated the SafeSport code.  As part of SafeSport's investigation of the accusations against her, Shaffer was interviewed in July 2022.  Following the investigation, SafeSport determined that Shaffer had exhibited a pattern of abusive behavior in violation of the SafeSport Code and sanctioned her with three months' suspension and nine months' probation.  Shaffer was informed of her right to arbitrate the decision but declined to do so, claiming that the arbitration fee was cost prohibitive.

2.

In addition to the procedures contained in the SafeSport Code, the USEF bylaws grant any member the right to "file a grievance against the [USEF] . . . pertaining to any matter within the cognizance of the [USEF] and alleging a violation of any provision of the [USEF] Bylaws or Rules, the [ASA], or the USOC's Bylaws."  J.A. 310.[3]  The USEF bylaws also entitle any party who files such a grievance to a hearing and a written determination.  And the USOC bylaws grant USEF members the right to appeal the results to a panel of USOC personnel.  Finally, the USOC dispute resolution policy grants any

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

9

NBG member the right to appeal a decision of a USOC panel to an arbitral panel, which has the final say on any such dispute.

Navarro and Giorgio -- but not Shaffer -- pursued this recourse. Navarro and Giorgio joined a group of five other claimants and filed a grievance with the USEF alleging that SafeSport had violated their procedural rights pursuant to the ASA and the Due Process Clause of the Fifth Amendment by declining to grant them notice and a hearing before sanctioning them. The USEF determined that it lacked authority to hear the claims because they concerned constitutional and statutory rights rather than rights pursuant to the USEF bylaws. Consequently, the USEF dismissed the action. The claimants appealed that decision to a panel of USOC personnel. That panel also determined that it lacked authority to reach questions of federal law and rejected the appeal.

The claimants then sought to arbitrate their claims.[4] The arbitration involved a single issue: "What administrative or judicial body has the . . . authority to address a conflict between the rules and procedures of [SafeSport] and the conflicting due process protection identified in [36 U.S.C. § 220522(8)]?" J.A. 48. The section of the ASA at issue states that an organization is qualified to serve as an NGB only if it "provides an equal opportunity to [its members] to participate in amateur athletic competition . . . with

---

[4] This arbitration was distinct from the earlier arbitrations that Navarro and Giorgio had with SafeSport. The earlier arbitrations were instituted pursuant to the SafeSport Code and concerned the validity of SafeSport's sanctions. This second round of arbitration was instituted pursuant to the USEF and USOC bylaws and concerned the power of the USEF to enforce SafeSport's sanctions.

fair notice and opportunity for a hearing to any [member] *before* declaring the individual ineligible to participate" in NGB events.  36 U.S.C. § 220522(8) (emphasis supplied).

The arbitration panel determined that only a federal court could review the alleged "conflict of law" between the SafeSport Code and the ASA.  J.A. 56, 63–66.  In doing so, the panel indicated that it believed the SafeSport Code violates the ASA.  It found compelling that the NGBs like the USEF are required to enforce SafeSport sanctions, which SafeSport can impose before the sanctioned party has been given a hearing, even though Section 220522(8) of the ASA expressly requires NGBs to grant their own members a hearing before imposing any sanctions.

3.

Following the arbitration decision, Appellants filed suit in federal district court against Appellees.  Appellants asserted that (1) the ASA and the SafeSport Code unconstitutionally deprive them of their constitutional right to pre-determination notice and hearings; and (2) Congress has unconstitutionally delegated legislative, executive, and judicial powers to SafeSport.[5]

Appellees each filed motions to dismiss for lack of subject matter jurisdiction and failure to state a claim.  The district court granted those motions. The court first held that Appellants lacked standing to raise any claims against the USOC because Appellants had

---

[5] Appellants also claimed that SafeSport operates in violation of the Appointments Clause, that SafeSport's denial of pre-determination hearings violates the ASA, and that the USEF forces unlawful adhesion contracts on its members.  The district court dismissed each of those claims, but Appellants did not appeal those dismissals.

11

not articulated any injury fairly traceable to that organization. The court also dismissed Shaffer's claims after finding that she had failed to exhaust administrative remedies, given that she did not arbitrate SafeSport's initial sanction as permitted by the SafeSport Code. And the district court held that Appellants' due process claims were barred because Appellees are not state actors. Finally, the court held that Congress could not have unconstitutionally delegated governmental power to SafeSport because SafeSport does not exercise governmental power.

This appeal timely followed.

## II.

We review motions to dismiss de novo. *Blair v. Appomattox Cnty. Sch. Bd.*, 147 F.4th 484, 491 (4th Cir. 2025). We must accept all well-pled facts as true and draw all reasonable inferences in favor of the plaintiffs. *Id.* Dismissal is appropriate if the complaint fails to allege sufficient factual matter to state a plausible claim for relief. *Id.*

And, as always, we must also satisfy ourselves of our own subject matter jurisdiction before addressing the merits. *See Talley v. Folwell*, 133 F.4th 289, 297 & n.3 (4th Cir. 2025).

## III.

Appellants makes four arguments on appeal: (1) Appellants have standing to sue the USOC; (2) Appellant Shaffer was not required to arbitrate her claims before raising them in federal court; (3) Appellees are state actors subject to the Due Process Clauses of the Fifth and Fourteenth Amendments; and (4) SafeSport unconstitutionally wields governmental power. We address each in turn.

12

A.

Standing

1.

Appellants first argue that the district court wrongly dismissed their claims against the USOC for lack of standing. The district court held that Appellants lacked standing to sue the USOC because Appellants did not allege in their complaint any injury fairly traceable to the USOC. The district court specifically found that the USOC had not contributed to Appellants' ineligibility determinations, had not drafted the relevant provisions of the SafeSport Code, and had been stripped of any power to review SafeSport's eligibility determinations by the time SafeSport sanctioned Appellants.[6]

Appellants argue that this holding was erroneous. They reason that the ASA requires the USOC "to enforce the requirements and duties of NGBs." Appellants' Opening Br. at 33. And, the argument goes, one such requirement is that an NGB must grant members notice and a hearing before the NGB may declare the member ineligible for continued membership. Thus, Appellants argue that they have articulated an injury against the USOC because the USOC declined to compel the USEF to grant Appellants notice and a hearing before enforcing SafeSport's ineligibility determinations.

---

[6] The Safe Sport Authorization Act became effective on February 14, 2018. Pub. L. 115–126, 132 Stat. 318. SafeSport did not render Giorgio's decision until July of that year. The decision in Navarro's case came five months later, and Shaffer's not until February 2024.

13

2.

Federal courts have jurisdiction over actual cases and controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing is an essential element of both. *Id.* at 560. Standing has three elements: injury, causation, and redressability. *Id.* at 560–61. The first element, injury, requires invasion of a legally protected interest. *Id.* at 560. The second, causation, requires that the alleged injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)) (cleaned up). And the third element, redressability, requires that a plaintiff demonstrate that a favorable decision is likely to remedy the injury complained of. *Lujan*, 504 U.S. at 561.

3.

There are two issues with Appellants' argument. First, the USOC did not cause Appellants any injury. Appellants acknowledge that it was SafeSport, not the USEF or the USOC, that imposed the sanctions at issue. But SafeSport is not an NGB and therefore is not subject to the jurisdiction of the USOC. Rather, the reverse is true. Federal law plainly states that SafeSport "shall . . . exercise jurisdiction *over the* [*USOC*] and each national governing body with regard to safeguarding amateur athletes against abuse . . . in sports." 36 U.S.C. § 220541(a)(1)(B) (emphasis supplied). And the ASA only requires NGBs to grant a pre-determination hearing before "declaring [an] individual ineligible to participate" in Olympic sports. *Id.* § 220522(8). Significantly, the SafeSport Authorization Act expressly exempts SafeSport from that requirement, stating, "[n]othing in this subsection shall be construed . . . to preclude [SafeSport] from imposing interim

14

measures or sanctions on an individual *before* an opportunity for a hearing or arbitration." *Id.* § 220541(a)(2) (emphasis supplied). Thus, if the USEF had declared Appellants ineligible for membership, the ASA would obligate the USEF to first grant notice and a hearing on the matter, and the USOC would be obligated to enforce the ASA's notice and hearing rules against the USEF. But critically, it was SafeSport that sanctioned Appellants -- not the USEF. And neither the USEF nor the USOC had any power to review SafeSport's decisions or the processes by which they were made. Rather, both the USEF and the USOC were required by law to enforce SafeSport's determinations. *Id.* § 220541(b). As a result, the USOC did not cause the alleged injury and did not have any power to prevent it. Thus, Appellants have not demonstrated the causation required to establish standing against the USOC.

Beyond the lack of causation, Appellants have not demonstrated that a favorable ruling would remedy the alleged harm. SafeSport is an "independent" organization. 36 U.S.C. § 220541(a)(1)(A). It has jurisdiction over the USOC and the NGBs concerning questions of members' eligibility in light of allegations of abuse. *Id.* § 220541(a)(1)(B). Pursuant to the SafeSport Code, SafeSport's eligibility determinations may only be challenged in arbitration. *Id.* § 220541(a)(1)(H)(v). Even so, Appellants argue that the ASA requires the USEF to grant Appellants notice and a hearing before the USEF recognizes SafeSport's sanctions, and they argue that the USOC must enforce that requirement against the USEF. But ruling as much would do nothing to redress the harm that Appellants allege -- namely, that they have been sanctioned without due process.

15

Appellants do not dispute that SafeSport has rendered a final decision in each of their cases. And as we explain above, neither the USEF nor the USOC may revisit those decisions in any way. Therefore, even if we were to order a hearing, it would simply lead to the same result -- that is, the USEF enforcing SafeSport's sanctions and the USOC affirming that decision. Thus, Appellants have not demonstrated that a favorable ruling would redress their injuries and consequently lack standing to sue the USOC. We affirm the district court's holding on this issue.

## B.

### Exhaustion

Appellants next argue that Shaffer was not required to exhaust the remedies afforded to her by the SafeSport Code before raising claims in federal court. Appellees argued before the district court that all of Shaffer's claims should be dismissed because she declined to arbitrate the sanctions SafeSport imposed on her. The district court agreed. Citing to two unpublished, out of circuit district court opinions,[7] the court held, "plaintiffs must exhaust SafeSport's arbitration procedures before filing a civil complaint." J.A. 590. The court acknowledged Shaffer's argument that she could not afford arbitration. But the court noted that sanctioned parties may apply to SafeSport for a need based waiver of arbitration fees. Because Shaffer did not apply for that waiver, the court concluded that she had failed to exhaust her administrative remedies and dismissed her claims.

---

[7] The district court cited to *Sanderson v. U.S. Ctr. for SafeSport*, No. 21-cv-01771, 2021 WL 3206322, at *5 (D. Colo. July 29, 2021) and *Callaghan v. U.S. Ctr. for SafeSport*, No. 2:18-cv-336, 2018 WL 4107951, at *5–6 (M.D. Fla. Aug. 29, 2018)).

16

The ASA grants SafeSport "discretion" to "utilize a neutral arbitration body . . . to resolve allegations of sexual abuse within its jurisdiction to determine the opportunity of any [member] . . . to participate in amateur athletic competition."    36 U.S.C. § 220541(c)(1).    Thus, if the law contains an arbitration requirement, it is necessarily limited to those two issues.  Appellees have themselves repeatedly endorsed this position. At the conclusion of the USEF hearing with respect to the claims of Navarro and Giorgio, the USEF concluded that it "did not have jurisdiction or authority to address [Appellants'] Section 220522(a)(8) argument or due process issue."  J.A. 53.  And when Navarro and Giorgio appealed that holding to the USOC, it likewise affirmed that it "does not have jurisdiction over the subject matter of [their] Complaint and that the Complaint [did] not state a claim upon which the Hearing Panel could provide relief."  *Id.*

Even the SafeSport Code itself, through successive iterations, has consistently maintained that SafeSport's jurisdiction extends only to abuse claims among NGB members and their eligibility for continued membership.  *See* J.A. 160–61 (2023 SafeSport Code defining the organization's jurisdiction as including only abuse claims against NGB members); J.A. 188 (2023 SafeSport Code limiting the scope of arbitration to "whether a Respondent violated the [SafeSport] Code"); J.A. 139 (2018 SafeSport Code explaining that "[a]rbitration shall resolve only whether a Responding Party violated the *SafeSport Code* . . . . Challenges to, or complaints about, any organizational practices and procedures shall not be addressed and the arbitrator shall be limited to evaluating whether a Covered Individual violated the *Code*" (emphases in original)).

17

Moreover, the authorities cited by the district court do not support its conclusion -- not to mention that such authorities are not precedential, given that they are not only unpublished but also outside our circuit. In *Callaghan*, the plaintiff, Callaghan, alleged that SafeSport had "violated its own rules and procedures in investigating allegations of sexual misconduct" against Callaghan. *Callaghan*, 2018 WL 4107951, at *1. Consequently, Callaghan sued for "breach of contract" and "breach of contractual due process," alleging that the "interlocking agreements between Safe Sport, [the] USOC, NGBs, and members of the NGBs" created a binding contractual relationship between Callaghan and SafeSport. *Id.* at *4. The Middle District of Florida dismissed those claims because they had not first been raised in arbitration. *Id.* at *5–7. But crucially, the court did so only because both claims were or conceivably could have been within the scope of the SafeSport Code's arbitration provision, which is limited to "whether a Responding Party violated the Safe Sport Code . . . and/or the appropriate sanction." *Id*. at *4, 6.

Similarly, in *Sanderson*, the District of Colorado took up an athlete's claim that he was entitled to reinstatement after SafeSport disqualified him from Team USA Shooting. *Sanderson*, 2021 WL 3206322, at *3. The court dismissed that claim for lack of subject matter jurisdiction because federal law grants SafeSport "exclusive jurisdiction" over "all matters pertaining to the United States participation in the Olympic Games" and expressly declines to grant a private right of action. *Id*. at *3 (citing 36 U.S.C. §§ 220503(3)(A) & 220541(a)(1)(B)).

Shaffer's claims, by contrast, challenge the constitutionality of SafeSport and its procedures -- not the merits of its sanctions. Therefore, Shaffer's claims could not have

18

been resolved in arbitration.   As a result, there was no exhaustion requirement. Accordingly, we reverse the district court's determination that Shaffer was required to exhaust administrative remedies pursuant to the bylaws of the USEF and the USOC before bringing this lawsuit.

C.

Due Process

1.

Appellants next argue that the district court wrongly dismissed their due process claims against Appellees.  The district court dismissed those claims after concluding that Appellees are not state actors and thus are not subject to the Due Process Clause of the Fifth Amendment.  In so holding, the district court noted that in *San Francisco Arts & Athletics, Inc. v. USOC*, 483 U.S. 522 (1987) (hereinafter, "*SFFA*"), the Supreme Court determined that the USOC is not ordinarily a state actor for due process purposes because it is a private organization that does not perform traditional governmental functions.  The district court further reasoned that because the USEF and SafeSport are also private and perform similar functions as the USOC, the logic of *SFAA* necessarily applies to those organizations as well.  Thus, the court concluded that none of Appellees are state actors subject to the Due Process Clause.

Appellants assert that the district court erred for two reasons.  First, Appellants again claim that the ASA guarantees them the right to a pre-determination notice and a hearing regardless of whether Appellees are state actors.  Second, Appellants argue that the ASA

19

"delegat[es] governmental powers to [SafeSport]," thus making SafeSport a state actor subject to the Due Process Clause.  Appellants' Opening Br. at 30.

## 2.

As we explain above, the ASA does not require SafeSport to grant any NGB member notice and a hearing before issuing preliminary sanctions.  Rather, the ASA only requires the NGBs themselves to do so.  SafeSport is not an NGB.  *See* 36 U.S.C. § 220522(8).  And although the SafeSport Authorization Act requires SafeSport to provide accused NGB members "fair notice and an opportunity to be heard," it expressly states, "[n]othing in this subsection shall be construed . . . to preclude [SafeSport] from imposing interim measures or sanctions on an individual *before* an opportunity for a hearing or arbitration.  *Id.* §§ 220541(a)(1)(E), (a)(2), (b) (emphasis supplied).  Thus, the only question is whether the district court correctly held that Appellees are not subject to the Due Process Clause.

The Constitution binds only state actors.  *San Fran. Arts & Athletics, Inc.*, 483 U.S. at 542.  "[T]here is no bright-line rule separating state action from private action." *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 116 (4th Cir. 2022) (en banc).  Consequently, the inquiry into whether a private actor should be treated as an agent of the state "is highly fact-specific in nature." *Id.*  But generally, a private entity will be treated as a state actor only under four scenarios: (1) when the entity "perform[s] [an] essential governmental function traditionally and exclusively reserved to the state"; (2) when the government has "outsourced one of its constitutional obligations to [that] private entity"; (3) when the government's "engagement or encouragement is so significant" that the entity must fairly

20

be held subject to the Constitution's requirements; and (4) when there is pervasive entwinement between the private entity and public institutions or officials. *Id.* at 115–16 (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809–10 (2019)).

As the district court noted, the Supreme Court held in *SFAA* that the USOC is not a state actor in the ordinary course of its business. *San Fran. Arts & Athletics, Inc.*, 483 U.S. at 547. The Court provided two reasons for this holding: (1) the USOC is a private entity that does not "perform[] functions that have been 'traditionally the exclusive prerogative of the Federal Government;'" and (2) in that case, there was no allegation that the government had directly compelled any of the USOC's actions. *Id.* at 542–47. In *SFAA*, the Court acknowledged that the USOC is congressionally chartered, is subject to extensive federal regulation, and performs functions in service of the public good. *Id.* at 543–45. Nonetheless, the Court held that none of those factors were sufficient to transform the USOC into a state actor. *Id.*

Here, given the Supreme Court's clear holding in *SFAA*, we are compelled to conclude that neither the USEF nor SafeSport are state actors. The USEF is a private corporation that exists by virtue of New York law. And although SafeSport is congressionally chartered, it is also a private organization incorporated in Colorado. Additionally, neither organization exercises any power materially different than those wielded by the USOC at the time the Supreme Court decided *SFAA*. Neither organization exercises traditional governmental authority, but instead, like the USOC, only facilitates United States representation in the Olympic Games. And although SafeSport has some investigatory and adjudicative power, such authority extends only to allegations of abuse

21

against NGB members, and its findings only have the effect of determining membership in private organizations. SafeSport has no general investigatory or enforcement power. Further, its jurisdiction is created and limited by the contracts that NGB members enter as a condition of membership.

There is also no evidence that Congress has compelled the injuries about which Appellants now complain. That is, Congress did not direct SafeSport to undertake the investigations against Appellants or sanction them without providing pre-enforcement procedures. To be sure, Congress provided Appellants with some general instructions. But Congress never instructed SafeSport to adopt the particular procedures Appellants now challenge. *See* 36 U.S.C. § 220541(a)(1) (stating that SafeSport "shall" undertake certain general obligations, such as "exercis[ing] jurisdiction over the corporation and each national governing body with regard to safeguarding amateur athletes against abuse"); *Id.* §§ 220542(a)(1)(C), (H) (instructing SafeSport to develop "policies[] and procedures to prevent the abuse . . . of amateur athletes participating in" Olympic sports but providing only "minim[al]" direction on how to do so). Nor did Congress instruct Appellees to take any action that may implicate Appellants' specific liberty interests. *See Halleck*, 587 U.S. at 809 ("Under this Court's cases, a private entity can qualify as a state actor in a few limited circumstances—including . . . when the government compels the private entity to take a *particular* action.") (emphasis supplied).

The relevant legislative history forecloses any remaining doubt on this issue. From the inception of the Olympic Games, private individuals and organizations have been solely responsible for training and sponsoring American Olympic athletes. That tradition has

persisted for 130 years.  Congress has intervened only twice in the face of compelling national crises.  Both times, it opted for minimal intervention with the express intent of preserving the private character of United States amateur, Olympic, and Paralympic sports. *See* Ben Wilhelm, Cong. Rsch. Serv., R47850, The United States Olympic and Paralympic Committee: A Primer 1–3 (2023).

Congress enacted the first such intervention, the ASA, to mitigate fights between rival athletic organizations.  But the ASA expressly preserved the private character of Olympic sports by leaving a network of private organizations in charge of selecting, training, and managing the United States Olympic delegation.  The second intervention, the SafeSport Authorization Act, took essentially the same approach by empowering yet another private organization to remove abusive individuals from Olympic sports, thereby aiding the original mission of the USOC and the NGBs.  Notably, in both the ASA and the SafeSport Authorization Act, Congress declined to go so far as to grant access to the courts. Thus, because none of Appellees possess state authority or acted at the direction of government entities, none of Appellees are state actors for the purposes of this lawsuit and consequently are not subject to the Due Process Clause.

Appellants do not present a compelling case to the contrary.  Their primary argument is that SafeSport exercises traditional government authority because it "is charged with rulemaking, investigating, and adjudicating the conduct of citizens." Appellants' Opening Br. at 29.  This argument is incorrect for a number of reasons.  First, as explained above, SafeSport does not have powers of general applicability: It has jurisdiction only by virtue of the contracts NGB members voluntarily enter as a condition

23

of working and competing under the Olympic umbrella. More importantly, the USOC, through the NGBs, previously had the same investigatory authority SafeSport now holds. In *SFAA*, the Supreme Court held that the USOC was not a state actor despite possessing such authority. *SFAA*, 483 U.S. at 544–48. Thus, Appellants argue in effect that *SFAA* was wrongly decided. We do not have the power to revisit that decision, nor to set aside Congress's clear intention to keep Olympic sports private.

Therefore, we hold that Appellees are not state actors subject to the Fifth and Fourteenth Amendments and consequently affirm the district court's dismissal of Appellants' due process claims.

### D.

### Private Non-delegation

### 1.

Finally, Appellants allege that Congress has unconstitutionally delegated judicial, executive, and legislative power to SafeSport in violation of the private non-delegation doctrine. The district court dismissed this claim. It held that "Congress has not delegated any [governmental] power to SafeSport," and specifically noted that SafeSport "lacks authority to promulgate or enforce federal rules." J.A. 602.

Appellants argue that the district court erred, and that "Congress has granted [SafeSport] sweeping rulemaking and enforcement authority over other private entities" in clear violation of the private non-delegation doctrine. Appellants' Opening Br. at 16. In support, Appellants cite to several portions of the SafeSport Authorization Act that purport to grant SafeSport "jurisdiction" over abuse allegations within Olympic sports and instruct

24

SafeSport to establish membership and personal conduct rules for NGBs. Appellants' Opening Br. at 15–18 (quoting 36 U.S.C. § 220541(a)(1)(A)). Appellants also argue, "the SafeSport Code, in its entirety, is incorporated into and made a part of the ASA by the federal statute," which states, "[t]he policies and procedures developed under subsection [220541(a)(1)(C)] shall apply as though they were incorporated in and made part of section 220524." Appellants' Opening Br. at 16–18 (quoting 36 U.S.C. § 220541(b)). Thus, Appellants assert that SafeSport in effect wields governmental authority. Because the constitution permits private entities to perform only "ministerial or advisory rules" on behalf of the government, Appellants argue that SafeSport's "considerable legislative, regulatory, administrative, and enforcement powers" violate the private non-delegation doctrine. Appellants' Opening Br. at 4, 15–16 (quoting *Pittston Co. v. U.S.*, 368 F.3d 385, 395 (4th Cir. 2004)).

2.

Before proceeding to the merits of this allegation, we must first assure ourselves of our own jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing is an essential element of that inquiry. *Id.* A general grievance that the government is acting unconstitutionally is insufficient to confer standing. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *United States v. Richardson*, 418 U.S. 166, 172–74 (1974); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–78 (1992) ("[A]n injury amounting only to the alleged violation of a right to have the Government act in accordance with [the Constitution] [is] not judicially cognizable."). Rather, before a plaintiff may challenge an allegedly unconstitutional delegation, they must first articulate a concrete and particularized injury

25

fairly traceable to some unlawful act by a defendant. Once a plaintiff has done so, they may also raise related, generalized questions of constitutional law -- including non-delegation claims. *See Collins v. Yellen*, 594 U.S. 220, 243–44 (2021) ("[T]he relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged.").

Here, however, Appellants have failed to articulate a cognizable injury that is fairly traceable to Appellees. As a result, the district court dismissed each of Appellants' claims. They appealed only two merits issues: their due process allegations and the non-delegation claim. As we explain above, Appellants' due process claims cannot proceed. Appellants thus lack standing to raise a non-delegation claim, and we must affirm the district court's dismissal of Appellants' lawsuit.

IV.

For the foregoing reasons, the district court is

*REVERSED in part and*
*AFFIRMED in part.*